## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GEORGE WILLIAMS, M.D.,      :      MOTION TO VACATE
    Movant,      :      28 U.S.C. § 2255
            :
    v.      :      CRIMINAL INDICTMENT NO.
            :      1:13-CR-0025-SCJ-JFK-4
UNITED STATES OF AMERICA,      :
    Respondent.      :      CIVIL FILE NO.
            :      1:16-CV-3916-SCJ-JFK

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his

federal sentence entered in this Court under the above criminal docket number.  The

matter is before the Court on the motion to vacate [302], Respondent's response [316],

and Movant's reply [321].  For the reasons discussed below, Movant's motion to

vacate and a certificate of appealability (COA) are due to be denied.

## I.    Background

The grand jury for the Northern District of Georgia indicted Movant on a

conspiracy to distribute controlled substances and five controlled-substances offenses.

(First Superseding Indictment, ECF No. 133).  Movant represented by Page Pate and

the government represented by Katherine I. Terry, entered into a plea agreement, in

which Movant pleaded guilty to count one, the controlled substances conspiracy.

(Guilty Plea and Plea Agreement, ECF No. 241-1; Plea Hr'g Tr., ECF No. 287). The Court imposed an eighty-four month term of imprisonment. (J., ECF No. 281). The record does not show that Movant appealed.

Movant now raises a collateral challenge and asserts ineffective assistance of counsel based on counsel's failure to (1) properly object to the two-level offense-level increase under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm; (2) persist in seeking a two-level offense-level decrease under U.S.S.G. § 2D1.1(b)(17), based on Movant satisfying the safety-valve criteria in U.S.S.G. § 5C1.2(a); (3) seek a two-level offense-level decrease under U.S.S.G. § 3B1.2(b) for a minor role in the offense; and (4) challenge the relevant conduct (responsibility for the equivalent of at least 20,000 kilograms of marijuana) attributed to Movant under U.S.S.G. § 2D1.1(c)(3) in calculating his base offense level. (Mot. to Vacate at 3, 13-27, ECF No. 302). For relief, Movant seeks resentencing. (Id. at 28).

## II.   28 U.S.C. § 2255 Standard

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255.

2

Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," United States v. Frady, 456 U.S. 152, 164 (1982), and the § 2255 movant bears the burden to establish his right to collateral relief, Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir.), cert. denied, _ U.S. _, 136 S. Ct. 267 (2015).

Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice."  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); see also Massaro v. United States, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts).

"An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255).  That is the case here, as shown in the discussion below.

3

### III.   **Discussion**

#### A.   **Additional Background**

Movant was charged, along with Larry Webman, Randy Webman, Dara Webman, Liz Gaitan, and George Borbas, with conspiring from July 2011 through January 24, 2013, to "distribute and dispense, outside the usual course of professional medical practice and for no legitimate medical purpose, mixtures and substances containing detectable amounts of various controlled substances, including, but not limited to, Oxycodone (Schedule II), Hydromorphone (Schedule II), Oxymorphone (Schedule II), Morphine Sulfate (Schedule II), Alprazolam (Schedule IV), Lorazepam (Schedule IV), and Carisoprodol (Schedule IV), in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and (b)(2)." (First Superseding Indictment at 6-7).

In the plea agreement, Movant admitted that he was in fact guilty of the crimes charged in Count One, and  the parties agreed, in order to meet the goals of a fair and reasonable sentence under 18 U.S.C. § 3553(a), to recommend a seventy-two month term of imprisonment.  (Guilty Plea and Plea Agreement at 1, 9).  At the plea hearing the government explained that the elements necessary to prove a drug-trafficking conspiracy were "that two or more people agreed in some way to accomplish a shared unlawful plan; that the defendant knew of the unlawful purpose of the plan and

4

willfully joined in it; the object of the unlawful plan was to unlawfully distribute and

dispense a controlled substance without a legitimate medical purpose and outside the

usual course of professional practice . . . ."  (Plea Hr'g Tr. at 15-16).  Movant stated

that he understood.  (Id.).  The government stated that the evidence would show as

follows:

> Beginning on or about July 2011 [Movant] was employed at a purported medical clinic known as – by various names: Premier Pain Management or referred to as PPMI.[1]  PPMI was owned and managed by Larry Webman and Randy Webman.  Dara Webman and Liz Gaitan, aka Liz Troncoso, were employees of PPMI.
>
> As part of the conspiracy Larry Webman and Randy Webman knowingly operated and maintained PPMI for the purpose of unlawfully distributing controlled substances stemming from a DEA investigation wherein DEA conducted surveillance and eventually sent undercover office[r]s in to investigate the operations of PPMI.
>
> During the course of the conspiracy [Movant] was aware that some patients came to PPMI seeking controlled substances not for a legitimate medical purpose but due to an addiction and/or for the purposes of selling controlled substances to others.
>
> The government had an expert in this case and that expert has reviewed some of the patient files and that expert would testify regarding his professional opinion on those files.  And that during the course of the conspiracy [Movant], with the knowledge of his co-conspirators, prescribed controlled substances to patients of PPMI outside the usual course of professional medical practice, knowing that there was no

---

[1]The company is sometimes referred to as PMMI.

5

legitimate medical purpose for them in the following ways:  sometimes without performing a sufficient medical exam, sometimes without assessing the individual patient's risk of abuse, sometimes without seeing the patient in person.

For example, on October 4th, 2012, [Movant], outside the usual course of professional medical practice, knowing there was no legitimate medical purpose for them, prescribed the following controlled substances without seeing patient "SM" in person: Hydromorphone, Schedule II; Oxycontin, Schedule II, and Carisoprodol, Schedule IV.  SM was in fact an undercover DEA agent posing as a patient with no legitimate medical need for those controlled substances and that these controlled substances were mixtures and substances containing detectable amounts of various controlled substances, Schedule II and Schedule IV.

(Id. at 20-22).  Movant agreed with the government's summary and stated that he was in fact guilty of Count One of the indictment.  (Id. at 23).

In preparation for sentencing, the probation department prepared Movant's Presentence Investigation Report (PSR).  At issue in these proceedings are Movant's base offense level and certain adjustments to that offense level.  (See PSR ¶¶ 236, 237, 238).  The PSR recommended a base offense level of thirty-four under § 2D1.1(c)(3), based on a drug equivalency of 20,000 kilograms of marijuana.[2]  (PSR ¶ 236).  The PSR states as follows –

---

[2]Section 2D1.1(c)(3) dictates level thirty-four for at least 10,000 but less than 30,000 kilograms of marijuana.  Section 2D1.1(c)(4) dictates level thirty-two for at least 3,000 but less than 10,000 kilograms of marijuana.

> [Movant] was the primary doctor during the scheme.  It is reasonably foreseeable[] that the defendant would be responsible for as much as codefendants Larry and Randy Webman were held responsible for, which was at least 20,000 kilograms of marijuana equivalency.
>
> . . . . That number is based upon the grams of oxycodone prescribed during the (a) 42 visits by under agents (at least 576 kilgrams of marijuana equivalency); (b) visits by co-defendant George Borbas and all of his known recruits (3,400 kilograms of marijuana equivalency); and (c) the visits by 48 additional patients, whose files were reviewed and found lacking a legitimate medical purpose by the Government's medical expert (at least 18,000 kilograms of marijuana equivalency).

(PSR ¶ 233).

The PSR recommended a two-level firearm increase, as follows – "Pursuant to USSG § 2D1.1(b)(1), 2 levels are added because Douglas Bearden, acting as a security guard for the clinic, possessed a firearm.  Considering that the clinic was operating illegally as a pill mill, and that this information was known by the employees of the clinic, the firearm was being used to protect the proceeds of the pill mills from the increased danger of the clientele they were dealing with on a regular basis."[3]  (PSR ¶ 237 (emphasis omitted)).  The PSR recommended that a two-level offense-level decrease under § 2D1.1(b)(17) (applicable if a defendant meets the five safety-valve criteria in § 5C1.2(a)) was unwarranted as Movant had not conducted any interviews

---

[3]On October 2013, the government gave notice that Bearden was an unindicted co-conspirator.  (See Resp. to Mot. for Bill of Particulars at 4 n.3, ECF No. 105).

or proffer session with the government and, thus, did not satisfy § 5C1.2(a)(5).  (PSR ¶ 238).  The PSR did not recommend a § 3B1.2(b) minor-role decrease.  (See PSR ¶ 240).

Counsel did not object to the § 2D1.1(c)(3) base-offense level or challenge the absence of a § 3B1.2(b) minor-role decrease.  Counsel, however, objected to the § 2D1.1(b)(1) firearm increase and the failure to recommend a § 2D1.1(b)(17) safety-valve decrease.  (PSR ¶¶ 237, 238).  Counsel objected to the two-level § 2D1.1(b)(1) firearm increase because Bearden, not Movant, possessed the firearm.  (PSR ¶ 237).  In Movant's sentencing memorandum, counsel argued that Bearden was not an indicted co-conspirator, that Bearden was not knowingly involved in the drug conspiracy, and that Movant never instructed or asked Bearden to carry a firearm, citing United States v. Westry, 524 F.3d 1198, 1221 (11th Cir. 2008).[4]  (Sentencing Mem. at 2-3, ECF No. 267).  Counsel further urged in the sentencing memorandum that "the Court accept the Government and [Movant's] sentencing recommendation of

---

[4]Westry contains a four part test for a firearm enhancement, requiring the government to show that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of the possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." Id. at 1221 (quoting United States v. Gallo, 195 F.3d 1278, 1284 (11th Cir. 1999)) (internal quotation marks omitted).

AO 72A
(Rev.8/82)

72 months which the parties have agreed [was] reasonable under 18 U.S.C. § 3553(a)." (Id. at 1, 3-9).

At the sentencing hearing, counsel stated that there had been no sit-down debriefing and, therefore, agreed with the government that a § 2D1.1(b)(17) safety-valve decrease was unwarranted. (Sentencing Tr. at 4, ECF No. 288). The Court stated,

> All right. So the only objection you have is to the possession of the firearm.
>
> . . . [T]he way I look at that is that it's part of it. . . . I understand you all are saying it doesn't relate, but in all due respect to you, Mr. Pate, I think it does relate to the security officer being there, the large number of people there. They are more or less protecting them, the money, protecting them from abuse or whatever with the money for these illegal transactions, drug transactions. Well, I won't want say transactions but illegal acts going on.

(Sentencing Tr. at 4). Counsel argued that there was no evidence that Movant had ever suggested the need for armed security. (Id. at 4). The Court noted counsel's argument and overruled the objection. (Id. at 4-5).

Movant's total offense level was thirty-five, with a criminal history category of I and a guidelines range of 168-210 months of imprisonment, and both parties presented argument based on the factors in § 3553 in support of the recommended

seventy-two month sentence.   (See id. at 18, 25, 28-29).   In deciding Movant's sentence, the Court found as follows –

>   We start off with an offense level of 35 and a criminal history category of a one and a custody guideline range of 168 to 210 months.
>
>   In any sentencing, judges in the federal system start off looking at the 3553(a) factors and one of those first factors you look at . . . is the nature and circumstances of the situation.
>
>   In reading the letters last night and as I got them in and as they were filed with Mr. Pate, all of them were good but there are some that just kind of stood out above others, the letters from family members, telling me what a good person you are.
>
>   . . .
>
>   It's always -- you know, I'll be fair.  To get where you got in life, going to Meharry in Nashville and coming from Detroit and doing all the things you did, it's not easy to be a doctor.  It takes a lot of work to get to be a doctor and a lot of hard work.  And losing your license has got to be – you know, I knew you were going to lose your license as I reviewed this last night.  And I thought, golly, to go through all of that and lose your license, you can't practice medicine any more, that's tough . . . .
>
>   . . .
>
>   But here is the hump . . . that this court can't get over: you are not the same as Randy Webman and Larry Webman.  Larry Webman stood here this morning and would not accept responsibility and Larry Webman has a federal conviction on his record and he got 120 months.  Randy Webman stood here this morning with three prior federal convictions and he got 132 months. . . .

10

But there is something else, though, that makes you different than the Webmans. You more than anybody in that building, you understood the dangers of giving people all these pills, of creating addictions. You know, the Webmans may have a general idea but you knew. You knew every time you signed one of those prescriptions I'm giving somebody something. Maybe sometimes they deserved to get those amount of pills. But you wouldn't be sitting here today if what you did was a normal medical office operation. That's just a fact. And if you were just doing basically what doctors do in offices every day, you would probably be in a medical office somewhere right now doing it and you did not.

I understand, Mr. Pate and Ms. Terry, that you all have a 72-month agreement, and I prefer going along with agreements that the defense attorney and the government come up with. Mr. Pate, you're right, you all do know the case better than I do.

But, on the other hand, judges don't always agree with the agreements you all bring forth and you all tell your clients that and I tell them that at the guilty plea. Whereas I don't think you deserve 132 months in jail or 120, I cannot agree to the 72. In all due respect, Mr. Pate and Ms. Terry, I cannot accept that.

So if you will stand up, Dr. Williams, I am going to sentence you.

Dr. Williams, again, taking into consideration the 3553(a) factors and the matters that I just pointed out, I am going to sentence you to 84 months confinement.

. . .

Again, the court believes this is a reasonable, fair sentence taking into consideration all the 3553(a) factors, the nature and circumstances of the offense and the deterrence. Deterrence is important in this particular matter as far as the court is concerned and the seriousness of the matter.

11

(Sentencing Tr. at 34-37).

### B.   **Ground One**

Movant argues that he received ineffective assistance of counsel because counsel failed to object persuasively to the § 2D1.1(b)(1) firearm increase, citing <u>United States v. Otero</u>, 890 F.2d 366, 367 (11th Cir. 1989).[5]  (Mot. to Vacate at 16-17).  Movant asserts that Bearden was not charged as co-conspirator and that Movant did not hire Bearden or cause him to carry a firearm.  (<u>Id.</u> at 17).

The government argues that counsel's argument did not fall below the objective standard of reasonableness and that Movant cannot show prejudice.  (Resp't Resp. at 12-14, ECF No. 316).

Movant replies that counsel was ineffective because he attempted to show that the enhancement *did not apply. (*Mov't Reply at 11, ECF No. 321).  Movant asserts that counsel should have required the government to show that the enhance *did apply.* (<u>Id.</u>).  Movant argues that the government would not have been able to do so because

---

[5]<u>Otero</u> contains a three part test – (1) the possessor must be charged as a co-conspirator; (2) the co-conspirator must be found to have possessed the firearm in furtherance of the conspiracy; and (3) the defendant who is to receive the enhanced sentence must have been a member of the conspiracy at the time of the firearm possession.  <u>Id.</u> at 367; <u>see</u> <u>also</u> <u>United States v. Saftchick</u>, 335 F. App'x 870, 875 (11th Cir. 2009) (citing <u>United States v. Nino</u>, 967 F.2d 1508, 1514-15 (11th Cir. 1992) and finding that <u>Otero</u> did not require that the co-conspirator be indicted).

12

Bearden was not charged as a co-conspirator and Movant did not hire Bearden as a security guard.  (Id.).  Movant asserts that he was prejudiced because it raised his offense level by two points and changed his guidelines range.  (Id. at 13).

Under the Sixth Amendment, a defendant has the right to "reasonably effective" legal assistance.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him.  Id. at 690-92; Bottoson v. Moore, 234 F.3d 526, 532 (11th Cir. 2000) (stating that court may resolve an ineffective assistance claim based on either prong). Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect on the outcome of the proceedings" does not show prejudice.  Wood v. Allen,

13

542 F.3d 1281, 1309 (11th Cir. 2008) (quoting <u>Strickland</u>, 466 U.S. at 693) (internal

quotation marks omitted).

"The [two-level] enhancement for weapon possession in subsection (b)(1)

reflects the increased danger of violence when drug traffickers possess weapons. The

enhancement should be applied if the weapon was present, unless it is clearly

improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1,

Application Note 11(A).  The enhancement may be applied to a defendant when a co-

conspirator possesses a firearm in furtherance of the conspiracy, the defendant was a

member of the conspiracy at the time of the possession, and the possession was

reasonably foreseeable by the defendant.  <u>Saftchick</u>, 335 F. App'x at 873 (discussing

<u>Otero</u>).

It is apparent that the PSR recommendation and the government's agreement

thereto demonstrated, to the Court's satisfaction, that § 2D1.1(b)(1) applied.  (<u>See</u> PSR

¶ 237; Sentencing Tr. at 4).  Counsel performed reasonably when he attempted to

convince the Court that the enhancement should not apply.  To the extent that counsel

argued that § 2D1.1(b)(1) should not apply rather than arguing that the government had

failed to show that it did apply, there is no distinction between the arguments that

warrants finding that "no competent counsel would have" presented the argument as

14

presented by counsel.  Brownlee v. Haley, 306 F.3d 1043, 1059 (11th Cir. 2002) ("[W]e have held that in order to prove deficient performance, 'a petitioner must establish that no competent counsel would have taken the action that his counsel did take.'" (quoting Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000))).

Further, Movant's current argument is essentially the same as the argument presented by counsel.  Movant now argues that Bearden was not charged as a co-conspirator and that he did not hire Bearden or cause him to carry a firearm.  Counsel argued that Bearden was not an indicted co-conspirator and that Movant never suggested the need for armed security or instructed Bearden to carry a firearm.  Movant's current argument does not demonstrate that counsel was deficient.  Ground one is without merit.

## C.   **Ground Two**

Movant argues that he received ineffective assistance of counsel because counsel withdrew the argument for a § 2D1.1(b)(17) safety-valve decrease.  (Mot. to Vacate at 17-19).  Respondent argues that counsel was not deficient because – as there had been no debrief with the government as required by § 5C1.2(a)(5) – Movant was not entitled to the decrease.  (Resp't Resp. at 14).  In support, Respondent cites the subsection (a)(5) requirement as follows – "not later than the time of the sentencing

15

hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ."  (Id. at 14 (internal quotation marks omitted)).

Movant replies that the government omitted the second portion of subsection (a)(5), which states, "but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." (Mov't Reply at 15 (internal quotation marks omitted)).  Movant argues that the lack of a de-briefing is not determinative and that the determinative factor is whether he had any useful information not known to the government that he could have provided.  (Id. at 16).  Movant contends that the government had all the evidence that it needed, that he could not have added anything, and that the government has not identified any information that Movant did not provide that it did not already possess.  (Id. at 17).  Movant further argues that counsel was deficient for failing to seek a debriefing if it was determinative of his entitlement to the two-level decrease.  (Id.).  Movant asserts that he was prejudiced because his thirty-five total offense level and

16

168-210 month guidelines range would have been reduced to a thirty-three total

offense level and a 135-168 month guidelines range.  (Id. at 18).

> Strickland again applies.
>
> Section 2D1.1(b)(17) of the Guidelines provides that a defendant may receive a two-level reduction if he meets the safety-valve criteria set forth in § 5C1.2(a) of the Guidelines.  See U.S.S.G. § 2D1.1(b)(17).  The defendant has the burden of proving that he meets all of the safety-valve criteria.  See Cruz, 106 F.3d at 1557.[6]  Among those criteria is the requirement that:  "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  U.S.S.G. § 5C1.2(a)(5).  Under this requirement, "[t]he burden is on the defendant to come forward and to supply truthfully to the [G]overnment all the information that he possesses about his involvement in the offense, including information relating to the involvement of others . . . ."  Cruz, 106 F.3d at 1557.

United States v. Cervante-Sanchez, 659 F. App'x 530, 533 (11th Cir. 2016).

It was Movant's burden at sentencing to show entitlement to a § 2D1.1(b)(17)

safety-valve decrease and remains his burden in order to show ineffective assistance

of counsel.  Although a two-level decrease is not precluded because a defendant lacks

useful information of which the government is not already aware, the plain language

---

[6]United States v. Cruz, 106 F.3d 1553 (11th Cir. 1997).

17

of § 5C1.2(a)(5) still requires that a defendant "truthfully provide to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct . . . ." Thus, "[t]he defendant even must disclose information of which the government is already aware." United States v. Barreto, 486 F. App'x 16, 18 (11th Cir. 2012) (citing See United States v. Figueroa, 199 F.3d 1281, 1283 (11th Cir. 2000)). Movant did not meet the § 5C1.2(a)(5) requirement. Although Movant criticizes his counsel for failing to seek a debriefing or make sure that Movant provided the required information to the Government, Movant, now proceeding as his own counsel, makes no proffer as to the information he would have provided during such debriefing. See Hill v. Moore, 175 F.3d 915, 923 (11th Cir. 1999) (holding that absent proffer of evidence, the petitioner could not show prejudice based on counsel's failure to introduce such evidence); Gilreath v. Head, 234 F.3d 547, 552 n.12 (11th Cir. 2000) (stating that if a petitioner complains of counsel's failure to obtain witnesses, he must "show that witnesses not presented at trial actually were available and willing to testify at time of trial"). Movant's ground two is without merit.

18

### D.   **Ground Three**

In ground three, Movant argues that he received ineffective assistance of counsel because counsel failed to seek a § 3B1.2(b) minor-role decrease.  (Mot. to Vacate at 19-22).  In support, Movant states:  (1) PMMI was a family owned and operated business of the Webmans and he was clearly less culpable in his role as a doctor who could write prescriptions; (2) Movant was shown to be present in only one of the nine undercover visits which the PSR highlighted; (3) Movant received payment as a contract employee and lacked authority to hire or fire anyone; and (4) the clinic operated even when Movant missed work.  (Id. at 22).

Respondent argues that Movant's role was significant, that Movant received approximately $480,000 annually for his role in the conspiracy, that the clinic could not have met its criminal objective without Movant's prescriptions, and that the facts do not show that Movant's role was minimal or minor.  (Resp't Resp. at 16-17).

In reply Movant additionally asserts that he (1) did not understand the scope or structure of the enterprise or know that his name had been added as a majority owner; (2) did not know Gaitan or others were signing his name on prescriptions; (3) did not participate in the organization's planning, organizing, hiring, firing, recruiting, or pricing; (4) lacked decision making authority in that he was told how long

examinations should be and his discharge decision could be overruled; and (5) was easily replaceable as the prescribing physician. (Mov't Reply at 20-23).

Strickland again applies. A § 2255 movant "must establish that a reasonably competent attorney would have" sought the offense level decrease "and that there is a reasonable probability that the error affected the outcome of [his] case." Bates v. United States, 649 F. App'x 971, 974 (11th Cir. 2016). When sentencing error is raised for the first time in § 2255 proceedings as a claim of ineffective assistance of counsel, the alleged error "must at least satisfy the standard for prejudice that we employ in our review for plain error" – the party must show a reasonable probability of a different result.[7] Gordon, 518 F.3d at 1298. "It would be nonsensical if a petitioner, on collateral review, could subject his challenge of an unobjected-to error to a lesser burden by articulating it as a claim of ineffective assistance."[8] Id.

---

[7]An error raised for the first time on appeal is subject to plain error review if the defendant did not intentionally waive the error and the defendant shows error (1) that is plain and affects substantial rights and (2) that seriously affects the fairness, integrity, or public reputation of judicial proceedings, which the appellate court in its discretion should correct. Molina-Martinez v. United States, _ U.S. _, _, 136 S. Ct. 1338, 1343 (2016). An error generally affects substantial rights when there is a reasonable probability that, but for the error, the outcome of the proceeding would have been different. Id.

[8]Although the burden of showing prejudice (a reasonable probability of a different outcome) is essentially the same, on direct appeal, the litigant first must show

20

At sentencing, it is a defendant's burden to establish entitlement to a § 3B1.2(b) minor-role decrease. United States v. Cruickshank, 837 F.3d 1182, 1192 (11th Cir. 2016), cert. denied, _ U.S. _, 137 S. Ct. 1435 (2017). A minor participant is one "who is less culpable than that of most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. 3B1.2, Application Note 5. The district court should "consider two principles: 1) the defendant's role measured against the relevant conduct for which []he has been held accountable at sentencing; and 2) [his] role as compared to other participants in that relevant conduct." United States v. Rodriguez, 751 F.3d 1244, 1258 (11th Cir. 2014).

Application of § 3B1.2 "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, Application Note 3(C). The sentencing court should consider –

---

court error, which will be difficult for a guidelines claim that counsel never raised at the trial level. The Eleventh Circuit Court of Appeals, under plain error review, has stated that it has "never vacated a sentence as unreasonable because the district court failed to sua sponte apply a minor role reduction, and there is no law that would require a district court to do so. For this reason, there cannot be plain error." United States v. James, 598 F. App'x 714, 718 (11th Cir.), cert. denied, _ U.S. _, 136 S. Ct. 249 (2015). That same difficulty does not exist for a § 2255 ineffective-assistance claim when the movant must show counsel's deficiency.

AO 72A
(Rev.8/82)

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

Id.

Movant fails to establish that, if counsel had raised at sentencing the issues now raised by Movant, there is a reasonable probability that the Court would have found that he had established by a preponderance of evidence that he played a minor role. The ownership of PMMI and Movant's contract-employee role as a prescribing physician – which did not include organizing, hiring, firing, recruiting, or pricing and for which he received "about $10,000 a week[,]" (Sentencing Tr. at 29) – do not establish that Movant played a minor role. Movant's assertions that he was instructed on the length of examinations and that the enterprise could replace him by hiring

22

another physician do not change the role that he played as the primary doctor for the scheme as charged.  Movant pleaded guilty to a controlled substances scheme that lasted from approximately July 2011 through January 24, 2013, and that could not have functioned without a physician who was registered with the DEA to write prescriptions for the controlled substances at issue, and Movant was the primary doctor for the duration of the scheme.  (See Superseding Indictment at 6-7; Guilty Plea and Plea  Agreement; PSR ¶ 233); see also United States v. Nachamie, 121 F. Supp. 2d 285, 295 (S.D. N.Y. 2000) ("[T]he scheme could not operate without doctors. They played an absolutely essential role. . . . I cannot conclude that their role in this scheme was either minor or minimal.").  Movant's assertion that he did not understand the scope or structure of the enterprise is contradicted by his guilty plea proceedings.  (See Guilty Plea and Plea Agreement at 5-7; Plea Hr'g Tr. at 20-22).  Movant's assertions that Gaitan or others were signing his name on prescriptions, that his discharge decisions could be overruled, and that he was present during only one of the nine undercover visits which were highlighted in the PSR, are not sufficiently explained or supported by any evidentiary proffer such that the undersigned can find that, had counsel presented the same argument that Movant now presents, there is a reasonable

23

probability that the Court would have found that it was established by a preponderance of evidence that Movant played a minor role.

### E.   Ground Four

Movant argues in ground four that he received ineffective assistance of counsel because counsel failed to challenge the relevant conduct (responsibility for the equivalent of at least 20,000 kilograms of marijuana) attributed to Movant under § 2D1.1(c)(3) in calculating his base offense level.  (Mot. to Vacate at 22-27).  Movant states that he could not have foreseen the conduct of other co-conspirators and should be held responsible for "far less controlled substances" than the Webmans because (1) the Webmans were responsible for the day to day operations of PMMI and for hiring decisions; (2) several doctors worked at PMMI during the conspiracy; (3) Movant was only a contract employee; (4) Gaitan forged Movant's signature on prescriptions without his consent; and (5) Movant did not know others used his signature to fill replacement prescriptions without his consent.  (Id.).

Respondent argues that the amount attributed to Movant was within the scope of the conspiracy and reasonably foreseeable and that counsel was not unreasonable in failing to object.  (Resp't Resp. at 19).

24

Movant replies that the scope of his agreement to join in criminal activity did not include the conduct of other co-conspirators and that he could not foresee their conduct.  (Mov't Reply at 26-29).  Without specifications, Movant asserts that he should not be held responsible for pain pills obtained by Borbas from Larry Webman in side deals, for patients brought by Borbas who Movant did not see, for other doctors during the conspiracy period, or prescriptions written or forged by Gaitan.  (Id. at 24, 27-28).

Strickland as discussed earlier applies.  The Sentencing Guidelines allow the court to consider relevant conduct to determine the drug quantity in calculating the base offense level.  U.S.S.G. § 1B1.3(a).

> In a drug conspiracy, a defendant may be held accountable not only for his own acts but also for "'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.'" [United States v. Beasley, 2 F.3d 1551, 1561 (11th Cir. 1993)] (quoting U.S.S.G. § 1B1.3(a)(1)(B) (relevant conduct)).  "Thus, the Guidelines require a district court to attribute to a defendant all drugs foreseeably distributed pursuant to a common scheme or plan of which that defendant's offense of conviction was a part."  United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995).

United States v. Mertilus, 111 F.3d 870, 873 (11th Cir. 1997).

Movant pleaded guilty to being part of the PPMI conspiracy that lasted approximately from July 2011 through January 2013.  Movant agreed (1) that Larry

and Randy Webman knowingly operated and maintained PPMI for the purpose of unlawfully distributing controlled substances; (2) that he, Movant, was aware that patients came to PPMI to obtain controlled substances, not for a legitimate medical purposes but because they were addicted and/or for the purposes of selling controlled substances to others; and (3) that he had prescribed controlled substances to PPMI patients, knowing that there was no legitimate medical purpose and sometimes without seeing the patient.  The PSR shows that the conspiracy involved a 20,000 kilogram equivalency.  (PSR ¶ 233).

Movant fails to show that counsel was ineffective.  To succeed on this claim and show that he was entitled to a lower (thirty-two) base offense level, Movant would have been required to show that, had counsel objected, the government would have been unable to show that Movant could be held responsible for at least a 10,000 kilogram marijuana equivalency (the minimum amount for a thirty-four base offense level).  Had counsel objected and presented the non-detailed assertions that Movant now presents, there is no reasonable probability that the Court would have found that the government failed to establish by a preponderance of the evidence that the conspiracy involved at least a 10,000 kilogram equivalency or that a different base offense level applied.  Ground four fails.

26

**F.**      **Prejudice as to Final Sentencing Outcome**

The government also argues, as to all of Movant's grounds, that he cannot show prejudice because, even if counsel was deficient, Movant fails to show that there is a reasonable probability that different action by counsel would have changed the fact that the parties agreed to recommend a seventy-two month sentence and that the Court imposed an eighty-four month sentence based on consideration of the factors in § 3553. (Resp't Resp. at 19-20).

In reply, Movant appears to argue that he was prejudiced because he received a fifty percent variance which lowered his 168-210 month guideline range to eighty-four months and that he could expect to receive a fifty percent variance from a new guidelines range. (Mov't Reply at 29).

Strickland again applies, which requires Movant to show that but for counsel's allegedly deficient performance there is a reasonable probability that the result of his proceedings would have been different. If a litigant is able to show that his counsel was deficient in a manner that resulted in a higher sentencing range, in most cases that deficiency demonstrates a reasonable probability of a different sentencing outcome. See Molina-Martinez, 136 S. Ct. at 1346, 1348 (holding, on appeal from court error, that defendant showed a reasonable probability of a different outcome by showing that

27

the Court had sentenced him to the lower end of an erroneously high guidelines range);
see also Bates, 649 F. App'x at 975-76 (applying Molina-Martinez in the context of
ineffective assistance of counsel claim in § 2255 proceeding).  However, "[t]here may
be instances when, despite application of an erroneous Guidelines range, a reasonable
probability of prejudice does not exist.  The sentencing process is particular to each
defendant, of course, and a reviewing court must consider the facts and circumstances
of the case before it."  Molina-Martinez, 136 S. Ct. at 1346.

> The record in a case may show, for example, that the district court
> thought the sentence it chose was appropriate irrespective of the
> Guidelines range.  Judges may find that some cases merit a detailed
> explanation of the reasons the selected sentence is appropriate.  And that
> explanation could make it clear that the judge based the sentence he or
> she selected on factors independent of the Guidelines. . . .  Where,
> however, the record is silent as to what the district court might have done
> had it considered the correct Guidelines range, the court's reliance on an
> incorrect range in most instances will suffice to show an effect on the
> defendant's substantial rights.

Id. at 1346-47.  Thus, "where the record shows that the district court thought the
sentence it chose was appropriate regardless of the Guidelines range, then a reasonable
probability of prejudice will not be shown based on an incorrect calculation of the
Guidelines."  United States v. Oliver, 653 F. App'x 735, 742-43 (11th Cir. 2016)
(reviewing the sentencing court's discussion of § 3553(a) factors and stating, "[t]he

28

court made clear that the Guidelines were not the driver in its decision-making process").

As indicated above, grounds one and two on the § 2D1.1(b)(1) firearm increase and a § 2D1.1(b)(17) safety-valve decrease are without merit, and grounds three and four on the § 2D1.1(c)(3) base-offense level and a § 3B1.2(b) minor-role decrease fail. Further, grounds three and four additionally fail because Movant cannot show prejudice on his final sentencing outcome.  Had counsel successfully argued for a § 2D1.1(c)(4) thirty-two base offense level[9] and a § 3B1.2(b) minor-role decrease, Movant's total offense level would have been thirty-one.[10]  With a criminal history category of I, Movant's guidelines range would have been 108 to 135 months.[11]

---

[9]As previously discussed, Movant's base offense level was thirty-four under § 2D1.1(c)(3), which dictates level thirty-four for at least 10,000 but less than 30,000 kilograms of marijuana.  Section 2D1.1(c)(4) dictates level thirty-two for at least 3,000 but less than 10,000 kilograms of marijuana.  Movant does not suggest that he could have qualified for a lower offense level for less than a 3,000 kilogram marihuana equivalency.  See U.S.S.G. § 2D1.1(c)(5) (dictating level thirty for at least 1,000 but less than 3,000 kilograms of marihuana).

[10]A total offense level of thirty-one would be the result if Movant's base offense level was thirty-two, with a two level increase for gun possession, a two level increase for abuse of a position of trust, a two-level decrease for minor role, and a three level decrease for acceptance of responsibility.

[11]The guidelines range for offense level thirty-one, criminal history category I, is 108 to 135 months.  U.S.S.G. Ch. 5, Pt. A.

29

Based on the record set forth earlier and the Court's statement of its concerns about Movant's actions, (see Sentencing Tr. at 34-36, reviewed supra at III. A.), Movant fails to show that there is a reasonable probability that, with a different guidelines range, the Court would have imposed less than the 84-month term that it imposed. The parties agreed to recommend a below guidelines sentence of seventy-two months based on § 3553 factors. At the sentencing hearing, the parties urged the Court, upon consideration of § 3553 factors, to accept the recommended sentence. The sentencing proceedings revolved around whether § 3553 factors supported the seventy-two month sentence, and the Court nowhere suggested that it imposed the 84-month term because it was an appropriate fifty-percent departure from the low end (168 months) of the guidelines range. The Court stated that on consideration of § 3553 factors it did not accept the recommended sentence and imposed a sentence of eighty-four months. On this record, it appears that the Court "thought the sentence it chose was appropriate irrespective of the Guidelines range."[12] Molina-Martinez, 136 S. Ct.

---

[12]The undersigned notes, however, that the Honorable Steve C. Jones, the United States District Judge who imposed Movant's sentence, is in the best position to determine whether the Court thought that the eighty-four month sentence, at the time of imposition, was the appropriate sentence irrespective of Movant's guidelines range.

30

at 1346.  Based thereon, the undersigned recommends that Movant fails to show prejudice.

## IV.   <u>Certificate of Appealability</u>

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Melton v. Sec'y, Fla. Dep't of Corr.</u>, 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted), <u>cert. denied</u>, _ U.S. _, 136 S. Ct. 324 (2015).

It is recommended that a COA is unwarranted because it is not debatable that Movant fails to show that he received ineffective assistance of counsel.  If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal

Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

## V. <u>Conclusion</u>

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion [302] to vacate, set aside, or correct his federal sentence be **DENIED** and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 24th day of July, 2017.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

32