**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| GEORGE WILLIAMS, M.D., | : | MOTION TO VACATE |
|    Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|    v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:13-CR-0025-SCJ-JFK-4 |
| UNITED STATES OF AMERICA, | : | |
|    Respondent. | : | CIVIL FILE NO. |
| | : | 1:16-CV-3916-SCJ-JFK |

**ORDER ADOPTING MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION**

The matter is before the Court on Magistrate Judge Janet F. King's Final Report

and Recommendation ("R&R") [334], which recommends denying Movant's motion

to vacate [302] and a certificate of appealability, and on Movant's objections [339].

In reviewing a Magistrate Judge's Report and Recommendation, the district

court "shall make a de novo determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." 28 U.S.C.

§ 636(b)(1). "Parties filing objections to a magistrate's report and recommendation

must specifically identify those findings objected to. Frivolous, conclusive, or general

objections need not be considered by the district court." United States v. Schultz, 565

F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548

(11th Cir. 1988)) (internal quotation marks omitted). Absent objection, the district

judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation," Fed. R. Civ. P. 72, advisory committee note, 1983 Addition, Subdivision (b). "[T]he district court has broad discretion in reviewing a magistrate judge's report and recommendation" – it "does not abuse its discretion by considering an argument that was not presented to the magistrate judge" and "has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." Williams v. McNeil, 557 F.3d 1287, 1290-92 (11th Cir. 2009).

## I. Discussion[1]

The grand jury for the Northern District of Georgia indicted Movant – along with Larry Webman, Randy Webman, Dara Webman, Liz Gaitan, and George Borbas – for conspiring from July 2011 through January 24, 2013, to "distribute and dispense, outside the usual course of professional medical practice and for no legitimate medical purpose, mixtures and substances containing detectable amounts of various controlled substances, including, but not limited to, Oxycodone (Schedule II), Hydromorphone

---

[1] The Court's summary of the proceedings reflects much of the Magistrate Judge's language in the Report and Recommendation.

2

(Schedule II), Oxymorphone (Schedule II), Morphine Sulfate (Schedule II), Alprazolam (Schedule IV), Lorazepam (Schedule IV), and Carisoprodol (Schedule IV), in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and (b)(2)." (First Superseding Indictment at 6-7, ECF No. 133.)[2]

Movant, represented by Page Pate, entered into a plea agreement, in which he pleaded guilty to count one, the controlled substances conspiracy. (Guilty Plea and Plea Agreement, ECF No. 241-1; Plea Hr'g Tr., ECF No. 287.) In the plea agreement, Movant agreed that he was in fact guilty of the crimes charged in Count One and that the government would be able to prove that he "did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with co-conspirators Randy Webman, Larry, Webman, Dara Webman, and Liz Gaitan . . . to distribute and dispense controlled substances outside the usual course of professional medical practice and for no legitimate medical purpose." (Guilty Plea and Plea Agreement at 1, 5.) The parties agreed, in order to meet the goals of a fair and reasonable sentence

---

[2] Movant also was charged with five controlled substances offenses, which the government agreed to dismiss as part of Movant's agreement to plead guilty to the conspiracy count. (First Superseding Indictment at 12-14, Guilty Plea and Plea Agreement at 4-5, ECF No. 241-1.)

under 18 U.S.C. § 3553(a), to recommend a seventy-two month term of imprisonment. (Id. at 9.)

At the plea hearing, the government stated that the evidence would show as follows:

> Beginning on or about July 2011 [Movant] was employed at a purported medical clinic known as – by various names: Premier Pain Management or referred to as PPMI.[3] PPMI was owned and managed by Larry Webman and Randy Webman. Dara Webman and Liz Gaitan, aka Liz Troncoso, were employees of PPMI.
>
> As part of the conspiracy Larry Webman and Randy Webman knowingly operated and maintained PPMI for the purpose of unlawfully distributing controlled substances stemming from a DEA investigation wherein DEA conducted surveillance and eventually sent undercover office[r]s in to investigate the operations of PPMI.
>
> During the course of the conspiracy [Movant] was aware that some patients came to PPMI seeking controlled substances not for a legitimate medical purpose but due to an addiction and/or for the purposes of selling controlled substances to others.
>
> The government had an expert in this case and that expert has reviewed some of the patient files and that expert would testify regarding his professional opinion on those files. And that during the course of the conspiracy [Movant], with the knowledge of his co-conspirators, prescribed controlled substances to patients of PPMI outside the usual course of professional medical practice, knowing that there was no legitimate medical purpose for them in the following ways: sometimes without performing a sufficient medical exam, sometimes without

---

[3] The company is sometimes referred to as PMMI.

assessing the individual patient's risk of abuse, sometimes without seeing the patient in person.

For example, on October 4th, 2012, [Movant], outside the usual course of professional medical practice, knowing there was no legitimate medical purpose for them, prescribed the following controlled substances without seeing patient "SM" in person: Hydromorphone, Schedule II; Oxycontin, Schedule II, and Carisoprodol, Schedule IV. SM was in fact an undercover DEA agent posing as a patient with no legitimate medical need for those controlled substances and that these controlled substances were mixtures and substances containing detectable amounts of various controlled substances, Schedule II and Schedule IV.

(Plea Hr'g Tr. at 20-22.) Movant agreed with the government's summary and stated that he was in fact guilty of Count One of the indictment. (Id. at 23.)

The probation department prepared Movant's Presentence Investigation Report (PSR), which recommended a base offense level of thirty-four under U.S.S.G. § 2D1.1(c)(3), based on a drug equivalency of 20,000 kilograms of marijuana; recommended a two-level firearm increase under U.S.S.G. § 2D1.1(b)(1); stated that a two-level offense level decrease under U.S.S.G. § 2D1.1(b)(17) (applicable if a defendant meets the five safety-valve criteria in U.S.S.G. § 5C1.2(a)) was unwarranted; and did not recommend a U.S.S.G. § 3B1.2(b) minor-role decrease. (See PSR ¶¶ 236-238, 240.)

5

Counsel objected to the § 2D1.1(b)(1) firearm increase, initially objected but then withdrew objection to the failure to recommend a § 2D1.1(b)(17) safety-valve decrease, and did not object to the § 2D1.1(c)(3) base offense level or challenge the absence of a § 3B1.2(b) minor-role decrease. (PSR ¶¶ 237, 238; Sentencing Tr. at 4, ECF No. 288.) The Court overruled Movant's objection to the firearm enhancement and imposed an eighty-four month sentence. (Sentencing Tr. at 4-5, 36.) The record does not show that Movant appealed.

Movant now raises a collateral challenge and asserts ineffective assistance of counsel based on counsel's failure to (1) properly object to the two-level offense level increase under § 2D1.1(b)(1) for possession of a firearm; (2) persist in seeking a two-level offense level decrease under § 2D1.1(b)(17), based on Movant satisfying the safety-valve criteria in § 5C1.2(a); (3) seek a two-level § 3B1.2(b) minor-role decrease; and (4) challenge the relevant conduct (responsibility for the equivalent of at least 20,000 kilograms of marijuana) attributed to Movant under § 2D1.1(c)(3) in calculating his base offense level. (Mot. to Vacate at 3 and Mov't Mem. at 13-27, ECF No. 302.) For relief, Movant seeks resentencing. (Id. at 28.)

The Magistrate Judge recommends that Movant's grounds fail, and Movant has objected. (R&R, ECF No. 334; Objections, ECF No. 339.) In sections A. through D.

6

below, the Court presents additional facts as necessary and discusses the Magistrate

Judge's recommendation on each ground, along with Movant's objections thereto.[4]

## A.    Ground One – U.S.S.G. § 2D1.1(b)(1) Firearm Enhancement

The PSR recommended a two-level firearm increase, as follows – "Pursuant to

USSG § 2D1.1(b)(1), 2 levels are added because Douglas Bearden, acting as a security

guard for the clinic, possessed a firearm.  Considering that the clinic was operating

illegally as a pill mill, and that this information was known by the employees of the

clinic, the firearm was being used to protect the proceeds of the pill mills from the

increased danger of the clientele they were dealing with on a regular basis."[5]  (PSR

¶ 237 (emphasis omitted).)

Counsel objected to the two-level firearm increase because Bearden, not

Movant, possessed the firearm.  (Id.)  In Movant's sentencing memorandum, counsel

objected that the government had failed to meet its burden by showing (1) that Bearden

was an indicted co-conspirator – when he was simply an employee, did not distribute

---

[4]  To the extent that Movant presents issues in his objections that he did not present before the Magistrate Judge in his Motion to Vacate, the Court in its discretion declines to address them.

[5]  On October 24, 2013, the government gave notice that Bearden was an unindicted co-conspirator.  (See Resp. to Mot. for Bill of Particulars at 4 n.3, ECF No. 105.)

7

or buy drugs, did not share in drug proceeds, and did not know of the illegal scheme to distribute drugs; (2) that Bearden possessed a firearm in furtherance of the conspiracy – when there was no need for Bearden to carry a weapon in regard to the conspiracy; or (3&4) that Bearden's firearm possession during the time that Movant was part of the conspiracy was reasonably foreseeable by Movant – when Movant had never asked Bearden to carry a firearm. (Sentencing Mem. at 2-3, ECF No. 267 (relying on <u>United States v. Westry</u>, 524 F.3d 1198, 1221(11th Cir. 2008).) At the sentencing hearing, the Court stated,

> All right. So the only objection you have is to the possession of the firearm.
>
> . . . [T]he way I look at that is that it's part of it. . . . I understand you all are saying it doesn't relate, but in all due respect to you, Mr. Pate, I think it does relate to the security officer being there, the large number of people there. They are more or less protecting them, the money, protecting them from abuse or whatever with the money for these illegal transactions, drug transactions. Well, I won't want say transactions but illegal acts going on.

(Sentencing Tr. at 4.) Counsel asserted that, although the clinic owners perhaps though it was a good idea to protect the proceeds, there was no evidence that Movant had ever suggested the need for armed security. (<u>Id.</u> at 4.) The Court overruled Movant's objection. (<u>Id.</u> at 4-5.)

AO 72A
(Rev.8/82)

In his first ground, Movant argues that he received ineffective assistance of counsel because counsel failed to object persuasively to the firearm increase. (Mov't Mem. at 16-17 (citing United States v. Otero, 890 F.2d 366, 367 (11th Cir. 1989).) Movant asserts that the enhancement should not apply because Bearden was not charged as a co-conspirator and because Movant did not hire Bearden or cause him to carry a firearm. (Id. at 17.) In his reply to the government's response, Movant further argues that counsel was ineffective because he attempted to show that the enhancement *did not apply. (*Mov't Reply at 11, ECF No. 321.) Movant asserts that counsel should have required the government to show that the enhance *did apply.* (Id.) Movant argues that the government would not have been able to do so because Bearden was not charged as a co-conspirator and Movant did not hire Bearden as a security guard. (Id.) Movant asserts that he was prejudiced because it raised his offense level by two points and changed his guidelines range. (Id. at 13.)

After citing the relevant standard under Strickland v. Washington, 466 U.S. 668 (1984),[6] the Magistrate Judge observed that there was no requirement that a co-

[6] The Strickland standard, discussed in the R&R, applies to all of Movant's grounds. (See R&R at 13-14, 20, 27.)

9

conspirator in possession of a firearm be a *charged* co-conspirator and determined as

follows –

> It is apparent that the PSR recommendation and the government's agreement thereto demonstrated, to the Court's satisfaction, that § 2D1.1(b)(1) applied. (See PSR ¶ 237; Sentencing Tr. at 4). Counsel performed reasonably when he attempted to convince the Court that the enhancement should not apply. To the extent that counsel argued that § 2D1.1(b)(1) should not apply rather than arguing that the government had failed to show that it did apply, there is no distinction between the arguments that warrants finding that "no competent counsel would have" presented the argument as presented by counsel. Brownlee v. Haley, 306 F.3d 1043, 1059 (11th Cir. 2002) ("[W]e have held that in order to prove deficient performance, 'a petitioner must establish that no competent counsel would have taken the action that his counsel did take.'" (quoting Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000))).

> Further, Movant's current argument is essentially the same as the argument presented by counsel. Movant now argues that Bearden was not charged as a co-conspirator and that he did not hire Bearden or cause him to carry a firearm. Counsel argued that Bearden was not an indicted co-conspirator and that Movant never suggested the need for armed security or instructed Bearden to carry a firearm. Movant's current argument does not demonstrate that counsel was deficient. Ground one is without merit.

(R&R at 12 n.5, 14-15.)

Movant objects that "the Report stated that it did not matter whether the

government had to show that the enhancement applied or whether Pate argued that the

gun enhancement should not apply; since, there is no distinction between the

10

arguments that warrants finding that 'no competent counsel would have' presented the argument as presented by counsel." (Objections at 10-11.) Movant further objects that "the Report stated that Petitioner's current argument is essentially the same as the argument presented by Pate before and at sentencing . . . ." (Id. at 11.) Movant (1) states that the argument was not the same as counsel relied on Westry and Movant relies on Otero and (2) argues that the Magistrate Judge incorrectly stated that Otero does not require that the co-conspirator be charged. (Id. at 11, 13.)

"The [two-level] enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 11(A). "To apply the firearm enhancement of U.S.S.G. § 2D1.1(b)(1) based on a co-conspirator's gun possession, the government must show by a preponderance of the evidence that '(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of the possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant.'" Westry, 524 F.3d at 1221 (quoting United States v. Gallo, 195 F.3d 1278, 1284 (11th Cir. 1999)).

11

If at sentencing, "the government is successful in meeting this initial burden, then the evidentiary burden shifts to the defendant, who must demonstrate that a connection between the weapon and the offense was 'clearly improbable.'" United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006) (quoting United States v. Audain, 254 F.3d 1286, 1289 (11th Cir. 2001)).

Notably, the court in Otero stated, "Sentence enhancement for a co-conspirator's firearms possession is proper if three conditions are met: first, the possessor must be charged as a co-conspirator; second, the co-conspirator must be found to have been possessing a firearm in furtherance of the conspiracy; and third, the defendant who is to receive the enhanced sentence must have been a member of the conspiracy at the time of the firearms possession." Otero, 890 F.2d at 367.

The use of the wording "charged as a co-conspirator" in Otero, 890 F.2d at 367, has been held to be dicta. "The Otero court was not faced with the question whether a defendant could be sentenced based on the possession of a firearm by an uncharged or unnamed co[-]conspirator because the co-conspirators in that case were named and charged as co-conspirators." United States v. Luiz, 102 F.3d 466, 469 (11th Cir. 1996). The Eleventh Circuit has stated, "nowhere in the Otero opinion is it said that

AO 72A
(Rev.8/82)

enhancement is allowable *only* if the three conditions set out in the opinion are met."

United States v. Nino, 967 F.2d 1508, 1514 (11th Cir. 1992) (emphasis added).

> The Otero court faced a case in which certain facts existed and held that, given the facts before the court, enhancement was permitted by the guidelines. The words of Otero, like the words of every judicial opinion, must be read in the context of the particular facts of the case. . . .
>
> . . .
>
> In this case, Kalasho died before the conspiracy ended, and Askar cooperated with the government in exchange for immunity. But these events in no way negate their participation in the conspiracy or their use of firearms to further the group's mission. . . . Otero's holding remains good law in this circuit; but the rules of co-conspirator liability . . . do not require that the firearm possessor be a charged co-conspirator when that co-conspirator dies or is otherwise unavailable for indictment. To the extent, if any, the Otero opinion's words-as distinguished from the Otero decision-suggest otherwise, those words are dicta and are not the law.

Nino, 967 F.2d at 1514; see also United States v. Delgado, 56 F.3d 1357, 1372 (11th Cir. 1995) (confirming that Otero "identified three conditions that support a sentence enhancement for a coconspirator's firearm possession" but did not hold that an enhancement was allowable *only* if those conditions were met).

Movant's first objection fails. A full reading of the Magistrate Judge's reasoning does not show that the R&R disregarded the government's initial burden at sentencing or determined that it did not matter whether the government met its intital

13

burden. Counsel in the sentencing memorandum had in fact argued that the government had failed to meet its burden and then proceeded to argue why the enhancement should not apply. The Magistrate Judge (1) first clarified that it was apparent that the government had demonstrated to the Court's satisfaction that the enhancement applied (thus meeting its initial burden) and (2) then addressed counsel's performance in attempting to show otherwise. It is evident that the Magistrate Judge was addressing Movant's argument in his reply that counsel was ineffective for arguing that the enhancement *did not apply* instead of arguing that the government had failed to show that it *did apply.* (See Mov't Reply at 11.) The Magistrate Judge's wording simply reflects Movant's choice of words in his reply. Additionally, the Court agrees that counsel was not deficient for the manner in which he presented his argument.

Movant's second objection also fails. The Court has reviewed both counsel's argument in the sentencing memorandum, (Sentencing Mem. at 1-3), and Movant's argument in his Motion to Vacate, (Mov't Mem. at 16-17). The Court agrees with the Magistrate Judge that Movant's argument in his Motion to Vacate – which is essentially the same as the argument presented by counsel – is insufficient to demonstrate that counsel was deficient. The only notable difference is that Movant

14

cites <u>Otero</u> and counsel cited <u>Westry</u>.  As the legal discussion above shows, however, <u>Otero</u>'s statement that the co-conspirator must be charged is dicta and not a requirement for application of the firearm enhancement.  Ground One fails.

**B.    Ground Two – U.S.S.G. § 2D1.1(b)(17) Safety-Valve Decrease**

The PSR stated that a two-level offense level decrease under § 2D1.1(b)(17) (applicable if a defendant meets the five safety-valve criteria in § 5C1.2(a)) was unwarranted as Movant had not conducted any interviews or proffer session with the government and, thus, did not satisfy § 5C1.2(a)(5).  (PSR ¶ 238.)

Counsel initially objected to the failure to recommend a § 2D1.1(b)(17) safety-valve decrease.  (PSR ¶ 238.)  At the sentencing hearing, however, counsel stated that there had been no sit-down debriefing and, therefore, agreed with the government that a § 2D1.1(b)(17) safety-valve decrease was unwarranted.  (Sentencing Tr. at 4.)

Movant argues that he received ineffective assistance of counsel because counsel withdrew the argument for a § 2D1.1(b)(17) safety-valve decrease.  (Mov't Mem. at 17-19.)  Movant asserts that under § 5C1.2(a)(5) "the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement."  (Mov't Reply at 15 (internal quotation marks

15

omitted).) Movant argues that the lack of a debriefing is not determinative and that the determinative factor is whether he had any useful information not known to the government that he could have provided. (Id. at 16.) Movant contends that the government had all the evidence that it needed, that he could not have added anything, and that the government has not identified any information that Movant did not provide that it did not already possess. (Id. at 17.) Movant further argues that counsel was deficient for failing to seek a debriefing if it was determinative of his entitlement to the two-level decrease. (Id.) Movant asserts that he was prejudiced because his thirty-five total offense level and 168-210 month guidelines range would have been reduced to a thirty-three total offense level and a 135-168 month guidelines range. (Id. at 18.)

The Magistrate Judge found as follows –

It was Movant's burden at sentencing to show entitlement to a § 2D1.1(b)(17) safety-valve decrease and remains his burden in order to show ineffective assistance of counsel. Although a two-level decrease is not precluded because a defendant lacks useful information of which the government is not already aware, the plain language of § 5C1.2(a)(5) still requires that a defendant "truthfully provide to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct . . . ." Thus, "[t]he defendant even must disclose information of which the government is already aware." United States v. Barreto, 486 F. App'x 16, 18 (11th Cir. 2012) (citing [] United States v. Figueroa, 199 F.3d 1281, 1283 (11th Cir.

AO 72A
(Rev.8/82)

2000)).  Movant did not meet the § 5C1.2(a)(5) requirement.  Although Movant criticizes his counsel for failing to seek a debriefing or make sure that Movant provided the required information to the Government, Movant, now proceeding as his own counsel, makes no proffer as to the information he would have provided during such debriefing.  See Hill v. Moore, 175 F.3d 915, 923 (11th Cir. 1999) (holding that absent proffer of evidence, the petitioner could not show prejudice based on counsel's failure to introduce such evidence); Gilreath v. Head, 234 F.3d 547, 552 n.12 (11th Cir. 2000) (stating that if a petitioner complains of counsel's failure to obtain witnesses, he must "show that witnesses not presented at trial actually were available and willing to testify at time of trial").  Movant's ground two is without merit.

(R&R at 17-18.)

Movant objects, without citation to legal authority, that he was "debriefed when he agreed with the factual basis contained in the plea agreement . . . ." and restated during his guilty plea hearing.  (Objections at 19-20.)  Movant states that, if his agreement with the factual basis does not count as a debriefing, counsel was ineffective for failing to obtain a debriefing.  (Id. at 21.)

Movant's objection fails.  The Court is aware of no legal authority for the proposition that the factual basis for a guilty plea is the equivalent of a debriefing.  Further, as stated by the Magistrate Judge, Movant fails to show any deficiency by counsel absent any attempt at a proffer as to the information Movant would have provided during a debriefing.

17

## C.    Ground Three – U.S.S.G. § 3B1.2(b) Minor-Role Decrease

Movant pleaded guilty to being part of the PPMI conspiracy that lasted approximately from July 2011 through January 2013.  Movant agreed (1) that Larry and Randy Webman knowingly operated and maintained PPMI for the purpose of unlawfully distributing controlled substances; (2) that he, Movant, was aware that patients came to PPMI to obtain controlled substances, not for a legitimate medical purposes but because they were addicted and/or for the purposes of selling controlled substances to others; and (3) that he had prescribed controlled substances to PPMI patients, knowing that there was no legitimate medical purpose and sometimes without seeing the patient.  (See Guilty Plea and Plea Agreement at 5-7.) The PSR did not recommend a § 3B1.2(b) minor-role decrease, and counsel did not challenge the absence of a § 3B1.2(b) minor-role decrease.  (See PSR ¶ 240.)

In ground three, Movant argues that he received ineffective assistance of counsel because counsel failed to seek a § 3B1.2(b) minor-role decrease.  (Mov't Mem. at 19-22.)  In support, Movant states:  (1) PMMI was a family owned and operated business of the Webmans and he was clearly less culpable in his role as a doctor who could write prescriptions; (2) all but one of the nine undercover visits which the PSR highlighted showed either that Movant was not present or that the undercover operative

18

was not seen by Movant; (3) Movant received payment as a contract employee and lacked authority to hire or fire anyone; and (4) the clinic operated even when Movant missed work. (Id. at 22.) Movant also asserts that he (1) did not understand the scope or structure of the enterprise or know that his name had been added as a majority owner; (2) did not know Gaitan or others were signing his name on prescriptions; (3) did not participate in the organization's planning, organizing, hiring, firing, recruiting, or pricing; (4) lacked decision-making authority in that he was told how long examinations should be and his discharge decision could be overruled; and (5) was easily replaceable as the prescribing physician. (Mov't Reply at 20-23.)

The Magistrate Judge found as follows –

> Movant fails to establish that, if counsel had raised at sentencing the issues now raised by Movant, there is a reasonable probability that the Court would have found that he had established by a preponderance of evidence that he played a minor role. The ownership of PMMI and Movant's contract-employee role as a prescribing physician – which did not include organizing, hiring, firing, recruiting, or pricing and for which he received "about $10,000 a week[,]" (Sentencing Tr. at 29) – do not establish that Movant played a minor role. Movant's assertions that he was instructed on the length of examinations and that the enterprise could replace him by hiring another physician do not change the role that he played as the primary doctor for the scheme as charged. Movant pleaded guilty to a controlled substances scheme that lasted from approximately July 2011 through January 24, 2013, and that could not have functioned without a physician who was registered with the DEA to write prescriptions for the controlled substances at issue, and Movant was the

19

primary doctor for the duration of the scheme. (See Superseding Indictment at 6-7; Guilty Plea and Plea Agreement; PSR ¶ 233); see also United States v. Nachamie, 121 F. Supp. 2d 285, 295 (S.D. N.Y. 2000) ("[T]he scheme could not operate without doctors. They played an absolutely essential role. . . . I cannot conclude that their role in this scheme was either minor or minimal."). Movant's assertion that he did not understand the scope or structure of the enterprise is contradicted by his guilty plea proceedings. (See Guilty Plea and Plea Agreement at 5-7; Plea Hr'g Tr. at 20-22). Movant's assertions that Gaitan or others were signing his name on prescriptions, that his discharge decisions could be overruled, and that he was present during only one of the nine undercover visits which were highlighted in the PSR, are not sufficiently explained or supported by any evidentiary proffer such that the undersigned can find that, had counsel presented the same argument that Movant now presents, there is a reasonable probability that the Court would have found that it was established by a preponderance of evidence that Movant played a minor role.

(R&R at 22-24.)

Movant objects that he sufficiently supported his assertions in that the PSR shows evidence (1) that he did not know Gaitan or others were signing his name on prescriptions (citing PSR ¶¶ 124, 128-130);[7] (2) that his discharge decisions could be

_____

[7] Paragraph 124 refers to a cooperating source and states –

The CS stated that PMMI was engaged in the business of effectively selling prescriptions for controlled substances to cash paying customers who lacked medical necessity for the prescribed drugs. According to the CS, [Movant] was the prescribing doctor at the time they began working at PMMI. [Movant] saw approximately 45 patients per day. He typically saw a patient only at his initial visit, when he prescribed controlled substances following a very brief examination. On subsequent visits, the

20

overruled (citing id. ¶¶ 147-149);[8] and (3) that he was present during only one of the undercover visits highlighted in the PSR (citing id. ¶¶ 30-122).[9] (Objections at 25-26.) Second, Movant objects to the Report's assertion that he played more than a minor role because he earned about $10,000 a week. (Id. at 26.) Third, Movant objects that the

_____

      patient was usually able to obtain replacement prescriptions for controlled substances without seeing [Movant].

(PSR ¶ 124.) Paragraphs 128 through 130 state the following. The CS listed several persons who saw Movant once and then obtained replacement prescriptions for several months and stated that Borbas would ask the CS to pull all of his "recruits' files," which were then taken to Movant, who "would sign prescriptions for the patients without seeing them." (PSR ¶ 128.) A former employee stated that a clinic customer typically encountered only a paramedical before receiving a replacement prescription. (Id. ¶ 129.) A former employee stated that Gaitan often saw patients by herself, that patients received electronically generated prescriptions printed by Gaitan, and that Gaitan signed Movant's name in patient medical records. (Id. ¶ 130.) Further, the Court notes that a confidential source stated that Movant told Gaitan that she could sign his name to prescriptions. (Id. ¶ 166.)

  [8] Paragraphs 147 through 149 of the PSR show that Randy Webman overrode Movant's discharge of a patient one time. (PSR ¶¶ 147-149.)

  [9] The PSR shows that there were forty-two documented undercover visits to the clinic and outlines nine of those visits in order to give a general overview of the course of conduct. (PSR ¶¶ 30-122.) Of those nine visits, Movant was present on April 24 and July 12, 2012. (Id. ¶¶ 61, 66-68, 97, 103-107.) Additionally, the Court notes that the PSR shows that six undercover agents (whom Movant stated obtained prescriptions) saw Movant on their initial examination. (Id. ¶ 28.) Also, the PSR shows that Larry Webman stated, "[o]nce [Movant] started working there, he began to make money. [Movant] brought in about 60-80 patients a week." (Id. ¶ 179.)

21

Report only considered two of the five factors listed in the commentary to § 3B1.2 and did not consider factors (i) through (iii), which involve the defendant's understanding of the scope of the criminal activity, participation in planning and organizing, and role in decision making. (Objections at 26.) Movant then repeats, verbatim, the arguments that he raised in his reply and does not raise any further objection to the Magistrate Judge's findings. (Id. at 27-29.)

At sentencing, it is a defendant's burden to establish entitlement to a § 3B1.2(b) minor-role decrease. United States v. Cruickshank, 837 F.3d 1182, 1192 (11th Cir. 2016), cert. denied, _ U.S. _, 137 S. Ct. 1435 (2017). A minor participant is one "who is less culpable than that of most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. 3B1.2, Application Note 5.

The Court is unpersuaded by Movant's objection that he adequately supported his contentions that he did not know Gaitan or others were signing his name on prescriptions; that his discharge decisions could be overruled; and that he was present during only one of the undercover visits highlighted in the PSR. The paragraphs to which Movant cites (showing Gaitan's generation of electronic prescriptions) show Gaitan's role, but do not show that Movant was unaware of Gaitan's role and does not absolve Movant of his own role – which also is discussed in the paragraphs to which

22

Movant cites. See supra n.7. The overruling of one of Movant's discharge decisions is insufficient to show that he played a minor role, and, further, Movant's assertion that he was shown to be present only once is not supported by the PSR on which he relies. See supra nn. 8-9. Movant presents nothing in this objection that shows, contrary to the Magistrate Judge's finding, that counsel was ineffective for failing to seek a minor-role decrease.

Movant's objection to the Magistrate Judge's finding – that Movant played more than a minor role *because* he earned about $10,000 a week – fails because it misstates the Magistrate Judge's finding. The Magistrate Judge found that Movant's contract-employee role as a prescribing physician – for which he received a notable salary and which he asserted did not include organizing, hiring, firing, recruiting, or pricing – simply did not establish that Movant played a minor role such that counsel was ineffective for failing to seek a minor-role decrease. The Magistrate Judge went on to point out that the clinic could not have functioned without a physician who was registered with the DEA to write prescriptions for the controlled substances at issue and that Movant was the primary doctor for the duration of the scheme. This objection fails.

AO 72A
(Rev.8/82)

Movant's objection that the Magistrate failed to consider factors (i) through (iii) under the application note for § 3B1.2 also fails. Application of § 3B1.2 "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, Application Note 3(C). The sentencing court should consider –

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

24

Id. No one factor is more important than the other factors. Cruickshank, 837 F.3d 1195 (discussing the five factors in the application notes to § 3B1.2).

Movant does not contest application of factors iv. and v., (Objections at 27), and, further, the facts do not show that Movant was "simply" being paid for certain tasks. Movant's objection that the Magistrate Judge did not consider the other factors fails because the Magistrate Judge *did* consider them. The Magistrate Judge *did* consider Movant's understanding of the scope and structure of the enterprise and found that his assertion that he did not understand the scope and structure was contradicted by the guilty plea proceedings. (R&R at 23.) The Magistrate Judge *did* consider Movant's participation in planning/organizing and his decision-making authority and found that those factors did not warrant a minor-role decrease such that counsel was ineffective for failing to seek such. (Id. at 22.) Movant does not particularly object to these findings, and the Court finds no clear error therein.

Additionally, the Court agrees that Movant has not demonstrated that the degree of his planning/organizing and decision-making authority were such that no reasonable counsel would have failed to move for a minor-role decrease. See Brownlee, 306 F.3d at 1059 ("[W]e have held that in order to prove deficient performance, 'a petitioner must establish that no competent counsel would have taken the action that his counsel

25

did take.'"). Even if Movant's decision-making authority was limited in some areas, he had decision-making authority in regard to advising the Webmans on hiring and firing decisions, (PSR ¶¶ 186-87), as well as in functioning as the primary physician and being in charge of writing prescriptions. Although Movant's indispensable role in writing prescriptions is not determinative, Movant fails to show that he was substantially less culpable than the average participant in the conspiracy to which he pleaded guilty. Movant fails to establish that counsel provided ineffective assistance on a minor-role decrease.

### D.    **Ground Four – U.S.S.G. § 2D1.1(c)(3) Base Offense Level**

The PSR recommended a base offense level of thirty-four under § 2D1.1(c)(3), based on a drug equivalency of 20,000 kilograms of marijuana.[10] (PSR ¶ 236.) The PSR states as follows –

> [Movant] was the primary doctor during the scheme. It is reasonably foreseeable[] that the defendant would be responsible for as much as codefendants Larry and Randy Webman were held responsible for, which was at least 20,000 kilograms of marijuana equivalency.

> . . . . That number is based upon the grams of oxycodone prescribed during the (a) 42 visits by under agents (at least 576 kilgrams of

---

[10] Section 2D1.1(c)(3) dictates level thirty-four for at least 10,000 but less than 30,000 kilograms of marijuana. Section 2D1.1(c)(4) dictates level thirty-two for at least 3,000 but less than 10,000 kilograms of marijuana.

marijuana equivalency); (b) visits by co-defendant George Borbas and all of his known recruits (3,400 kilograms of marijuana equivalency); and (c) the visits by 48 additional patients, whose files were reviewed and found lacking a legitimate medical purpose by the Government's medical expert (at least 18,000 kilograms of marijuana equivalency).

(PSR ¶ 233.)  Counsel did not object to the § 2D1.1(c)(3) base offense level.

Movant argues in ground four that he received ineffective assistance of counsel because counsel failed to challenge the relevant conduct (responsibility for the equivalent of at least 20,000 kilograms of marijuana) attributed to Movant under § 2D1.1(c)(3) in calculating his base offense level.  (Mov't Mem. at 22-27.)  Movant states that he could not have foreseen the conduct of other co-conspirators and that he should be held responsible for "far less controlled substances" than the Webmans because (1) the Webmans were responsible for the day to day operations of PMMI and for hiring decisions; (2) several doctors worked at PMMI during the conspiracy; (3) Movant was only a contract employee; (4) Gaitan forged Movant's signature on prescriptions without his consent; and (5) Movant did not know others used his signature to fill replacement prescriptions without his consent.  (Id. at 23-24, 26.)  Movant also asserts that he should not be held responsible for pain pills obtained by Borbas from Larry Webman in side deals, for patients brought by Borbas who Movant

did not see, for other doctors during the conspiracy period, or prescriptions written or forged by Gaitan. (Mov't Reply at 27-28.)[11]

The Magistrate Judge found as follows –

> Movant fails to show that counsel was ineffective. To succeed on this claim and show that he was entitled to a lower (thirty-two) base offense level, Movant would have been required to show that, had counsel objected, the government would have been unable to show that Movant could be held responsible for at least a 10,000 kilogram marijuana equivalency (the minimum amount for a thirty-four base offense level). Had counsel objected and presented the non-detailed assertions that Movant now presents, there is no reasonable probability that the Court would have found that the government failed to establish by a preponderance of the evidence that the conspiracy involved at least a 10,000 kilogram equivalency or that a different base offense level applied. Ground four fails.

(R&R at 26.)

---

[11] The Court observes that Movant's factual argument in support of his claim that counsel was ineffective in regard to relevant conduct is unsupported by citation to the source of the asserted facts. (See Mov't Mem. at 23-24, 26; Mov't Reply at 27-28); see also Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1061 (11th Cir. 2011) ("The Seventh Circuit memorably said that appellate judges 'are not like pigs, hunting for truffles buried in briefs.' . . . Likewise, district court judges are not required to ferret out delectable facts buried in a massive record . . . ." (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991))); Skyline Corp. v. N.L.R.B., 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements . . . in briefs are not evidence."); Moss v. United States, No. 8:06-CR-464-T-17TGW, 2010 WL 4056032, at *18 (M.D. Fla. Oct. 15, 2010) (stating that arguments which "contain very limited citations to the record and no citations to any legal authority" fail).

AO 72A
(Rev.8/82)

Movant objects to the Magistrate Judge's conclusion "that the Government could have shown that [Movant] was involved in more than 10,000 kilograms of marijuana equivalency . . . ." (Objections at 31, 35.) Otherwise, Movant essentially repeats the argument that he presented in his reply to the government's response. (See id. at 31-35.)

Movant's objection fails because it is based on a misstatement of the Magistrate Judge's finding. The Magistrate Judge did not find that the government could have shown that Movant was involved in more than 10,000 kilograms of marijuana equivalency. The Magistrate Judge found that Movant failed to meet his burden because he had not demonstrated that, had counsel objected, the government would have been unable to show that Movant could be held responsible for at least a 10,000 kilogram marijuana equivalency (the minimum amount for a thirty-four base offense level).[12] Movant does not show otherwise.

---

[12] On collateral review, the movant is no longer presumed innocent with the burden of proof being assigned to the government; it is the movant's burden to establish his right to relief. See Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 68-69 (2009) ("At trial, the defendant is presumed innocent and may demand that the government prove its case beyond reasonable doubt. But '[o]nce a defendant has been . . . convicted of the offense for which he was charged, the presumption of innocence disappears.'" (quoting Herrera v. Collins, 506 U.S. 390, 399 (1993))); Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015) ("[Movant] bears the burden to prove the claims in his § 2255 motion."), cert. denied, _ U.S. _, 136

AO 72A
(Rev.8/82)

**E.     Prejudice in Regard to the Final Sentence**

In the plea agreement, the parties agreed, in order to meet the goals of a fair and reasonable sentence under 18 U.S.C. § 3553(a), to recommend a seventy-two month term of imprisonment.  (Guilty Plea and Plea Agreement at 9.)  Counsel urged in the sentencing memorandum that "the Court accept the Government and [Movant's] sentencing recommendation of 72 months which the parties have agreed [was] reasonable under 18 U.S.C. § 3553(a)."  (Sentencing Mem. at 1, 3-9).

At sentencing, it was determined that Movant's total offense level was thirty-five, with a criminal history category of I and a guidelines range of 168-210 months of imprisonment, and both parties presented argument based on the factors in § 3553 in support of the recommended seventy-two month sentence.  (Sentencing Tr. at 18, 25, 28-29).  The Court found as follows –

> We start off with an offense level of 35 and a criminal history category of a one and a custody guideline range of 168 to 210 months.
>
> In any sentencing, judges in the federal system start off looking at the 3553(a) factors and one of those first factors you look at . . . is the nature and circumstances of the situation.

---

S. Ct. 267.

AO 72A
(Rev.8/82)

In reading the letters last night and as I got them in and as they were filed with Mr. Pate, all of them were good but there are some that just kind of stood out above others, the letters from family members, telling me what a good person you are.

. . .

It's always -- you know, I'll be fair.  To get where you got in life, going to Meharry in Nashville and coming from Detroit and doing all the things you did, it's not easy to be a doctor.  It takes a lot of work to get to be a doctor and a lot of hard work.  And losing your license has got to be – you know, I knew you were going to lose your license as I reviewed this last night.  And I thought, golly, to go through all of that and lose your license, you can't practice medicine any more, that's tough . . . .


. . .

But here is the hump . . . that this court can't get over: you are not the same as Randy Webman and Larry Webman.  Larry Webman stood here this morning and would not accept responsibility and Larry Webman has a federal conviction on his record and he got 120 months.  Randy Webman stood here this morning with three prior federal convictions and he got 132 months. . . .

But there is something else, though, that makes you different than the Webmans.  You more than anybody in that building, you understood the dangers of giving people all these pills, of creating addictions.  You know, the Webmans may have a general idea but you knew.  You knew every time you signed one of those prescriptions I'm giving somebody something.  Maybe sometimes they deserved to get those amount of pills.  But you wouldn't be sitting here today if what you did was a normal medical office operation.  That's just a fact.  And if you were just doing basically what doctors do in offices every day, you would probably be in a medical office somewhere right now doing it and you did not.

31

I understand, Mr. Pate and Ms. Terry, that you all have a 72-month agreement, and I prefer going along with agreements that the defense attorney and the government come up with. Mr. Pate, you're right, you all do know the case better than I do.

But, on the other hand, judges don't always agree with the agreements you all bring forth and you all tell your clients that and I tell them that at the guilty plea. Whereas I don't think you deserve 132 months in jail or 120, I cannot agree to the 72. In all due respect, Mr. Pate and Ms. Terry, I cannot accept that.

So if you will stand up, Dr. Williams, I am going to sentence you.

Dr. Williams, again, taking into consideration the 3553(a) factors and the matters that I just pointed out, I am going to sentence you to 84 months confinement.

. . .

Again, the court believes this is a reasonable, fair sentence taking into consideration all the 3553(a) factors, the nature and circumstances of the offense and the deterrence. Deterrence is important in this particular matter as far as the court is concerned and the seriousness of the matter.

(Sentencing Tr. at 34-37).

The government in its response has argued, as to all of Movant's grounds, that he cannot show prejudice because, even if counsel was deficient, Movant fails to show that there is a reasonable probability that different action by counsel would have changed the fact that the parties agreed to recommend a seventy-two month sentence and that the Court imposed an eighty-four month sentence based on consideration of

32

the factors in § 3553. (Resp't Resp. at 19-20, ECF No. 316.) In reply, Movant appears to argue that he was prejudiced because he received a fifty-percent variance which lowered his 168-210 month guideline range to eighty-four months and that he could expect to receive a fifty-percent variance from any new guidelines range that might be imposed. (Mov't Reply at 29.)

The Magistrate Judge found that grounds one and two were without merit, and that, even if Movant could show that counsel was ineffective on grounds three and four such that his guidelines range would have been 108-135 months, Movant could not show prejudice on his final sentence. (R&R at 29-31.) The Magistrate Judge reasoned as follows –

> Based on the record set forth earlier and the Court's statement of its concerns about Movant's actions, (see Sentencing Tr. at 34-36 . . .), Movant fails to show that there is a reasonable probability that, with a different guidelines range, the Court would have imposed less than the 84-month term that it imposed. The parties agreed to recommend a below guidelines sentence of seventy-two months based on § 3553 factors. At the sentencing hearing, the parties urged the Court, upon consideration of § 3553 factors, to accept the recommended sentence. The sentencing proceedings revolved around whether § 3553 factors supported the seventy-two month sentence, and the Court nowhere suggested that it imposed the 84-month term because it was an appropriate fifty-percent departure from the low end (168 months) of the guidelines range. The Court stated that on consideration of § 3553 factors it did not accept the recommended sentence and imposed a sentence of eighty-four months. On this record, it appears that the Court "thought the sentence it chose was appropriate irrespective of the Guidelines range."[] . . . Based

33

thereon, the undersigned recommends that Movant fails to show prejudice.

(R&R at 30-31 (case citation omitted).) The Magistrate Judge noted, however, that the undersigned may best determine whether the Court thought that the eighty-four month sentence, at the time of imposition, was the appropriate sentence irrespective of Movant's guidelines range. (Id. 30 n.12.)

Movant does not address the Magistrate Judge's reasoning on the issue of prejudice and states simply that, if success on any of his grounds results in a lower guidelines range, he will have shown prejudice. (Objections at 36.) On review of this matter, the Magistrate Judge accurately reviewed the record and the Court's reasoning in concluding that Movant's sentence was not based on a departure from his guidelines range but was based on the agreed upon sentence and the Court's consideration of the § 3553 factors. Accordingly, the Court hereby finds that Movant does not show prejudice on his final sentencing outcome as to grounds three and four.

Additionally, even if Movant showed deficiency by counsel on all of his grounds and received a total offense level of twenty-seven and a seventy to eighty-seven month guidelines range,[13] Movant does not show prejudice as the final sentencing outcome.

---

[13] A twenty-seven adjusted offense level is derived, hypothetically, from an offense level of thirty-two based on a 3,000 to 10,000 kilogram marijuana equivalency, § 2D1.1(c)(4); no gun enhancement; a two-level safety-valve decrease, § 2D1.1(b)(17);

The undersigned would have imposed the same sentence based on the § 3553 factors already considered.

## II.    <u>Conclusion</u>

On *de novo* review of the issues to which Movant has objected, the Court finds no error in the Magistrate Judge's Report and Recommendation, and the Court otherwise finds no clear error.

**IT IS ORDERED** that Plaintiff's objections [339] are overruled and that the Magistrate Judge's Report and Recommendation [334] is **ADOPTED** as the Order of the Court.

**IT IS ORDERED** that Movant's § 2255 motion and a certificate of appealability are **DENIED** and that this action is **DISMISSED**.

**IT IS SO ORDERED** this 26th day of September, 2017.


s/Steve C. Jones
STEVE C. JONES
UNITED STATES DISTRICT JUDGE

_____

a two-level minor-role decrease, § 3B1.2(b); and – as previously assigned – a two-level abuse of trust increase and a three-level acceptance decrease, (PSR ¶¶ 240, 244). The guidelines range for offense level twenty-seven, criminal history category I, is seventy to eighty-seven months. U.S.S.G. Ch. 5, Pt. A.

AO 72A
(Rev.8/82)